**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| FARMERS INSURANCE EXCHANGE, TRUCK INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, MID-CENTURY INSURANCE COMPANY, and FARMERS NEW WORLD LIFE INSURANCE COMPANY, | ) ) ) ) ) ) | |
| | ) | Case No. 8:17-cv-_____ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | JURY DEMAND |
| GANON VAN DYKE | ) ) ) | |
| Defendant. | ) ) ) | |

**<u>COMPLAINT</u>**

Plaintiffs, Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company (collectively, "Farmers"), by and through their undersigned attorneys, hereby bring the following Complaint seeking injunctive relief and monetary damages against Defendant Ganon Van Dyke for (1) violations of the Federal Defend Trade Secrets Act, (2) violations of the Nebraska Trade Secrets Act, (3) breach of contract, (4) breach of fiduciary duty, and (5) tortious interference with a business relationship or expectancy. In support thereof, Farmers states as follows:

**NATURE OF THE CASE**

1.      Defendant Ganon Van Dyke is a former independent contractor Farmers' insurance agent. Under the terms of his agreement with Farmers, Van Dyke agreed to place all insurance business acceptable to Farmers with Farmers. Van Dyke agreed that Farmers owned all customer information and relationships and that he would keep this information confidential and would not use it to Farmers' detriment. Van Dyke agreed that upon termination of the

agreement, he would return all Farmers' materials and confidential, trade secret customer information to Farmers. Van Dyke also agreed that for a period of one year after termination of the agreement, he would not solicit, service, or accept insurance business from any Farmers' customer in his district.

2. While Van Dyke was an independent contractor Farmers' agent, he improperly solicited and switched Farmers' customers to competing insurance companies. After Van Dyke resigned from Farmers in 2015, Van Dyke retained Farmers' trade secret customer information and reports. Van Dyke used Farmers' confidential customer information to improperly and wrongfully access customer account details through Farmers' website. Van Dyke used and is using this confidential, trade secret customer information to solicit Farmers' customers and switch their business to competing insurance companies.

3. Van Dyke called Farmers' 1-800 number and impersonated a number of Farmers' customers. Van Dyke used the Farmers' confidential, trade secret customer information that he improperly retained to convince the operators that he was the customer to gain access to current customer information. Van Dyke used and is using the information that he obtained under false pretenses to solicit Farmers' customers and switch their business to competing insurance companies.

4. Farmers seeks an injunction, money damages and other relief to prevent Van Dyke from further misusing Farmers' trade secret customer information and to compensate Farmers for all damages Van Dyke caused by his misuse of Farmers' confidential, trade secret customer information.

## PARTIES

5.      Farmers Insurance Exchange, Truck Insurance Exchange and Fire Insurance Exchange are reciprocal inter-insurance exchanges organized and existing under the laws of the State of California, and have their principal place of business in Woodland Hills, California. They are in the business of selling insurance policies to customers and are licensed to do business in the State of Nebraska.

6.      Mid-Century Insurance Company ("Mid-Century") is a California stock corporation with its principal place of business in Los Angeles, California.  Mid-Century is in the business of selling insurance products and is licensed to do business as an insurer in the State of Nebraska.

7.      Farmers New World Life Insurance Company ("Farmers Life") is a Washington stock corporation with its principal place of business in Mercer Island, Washington.  Farmers Life is in the business of selling insurance products and is licensed to do business as an insurer in the State of Nebraska.

8.      Upon information and belief, Ganon Van Dyke is an adult resident of the State of Nebraska and does business in Douglas County, Nebraska.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §1331 because Farmers' cause of action under 18 U.S.C.A. § 1836 presents federal questions.  This Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C.A. § 1367(a).  The state claims asserted herein are related to the Federal Defend Trade Secrets Act claim and are part of the same case or controversy.

10.     Venue is proper in this District pursuant to 28 U.S.C.A. § 1391(a) because Van Dyke resides in this District and a substantial part of the events giving rise to Farmers' claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

**A.     Van Dyke Contracts to Be an Exclusive Farmers' Agent and Commits to Farmers' Confidential and Trade Secret Customer Information**

11.     Effective December 1, 2007, Farmers and Van Dyke executed an Agent Appointment Agreement.  *See* Exhibit A.  Under the Agent Appointment Agreement, Van Dyke entered into an independent contractor relationship with Farmers to be a Farmers' insurance agent.  Van Dyke agreed that customer information and expirations belonged to Farmers and would be returned to Farmers upon termination of the Agent Agreement.  Paragraph I provided:

> The Agent acknowledges that all manuals, lists and records of any kind (including information pertaining to policyholders and expirations) are the confidential property of [Farmers] and agrees they shall not be used or divulged in any way detrimental to [Farmers] and shall be returned to [Farmers] upon termination of the Agency.

*Id.*, ¶ I.

12.     Farmers agreed to pay new business and service commissions to Van Dyke.  *Id.*, ¶ A.  Farmers agreed to provide manuals, forms, and policyholder records necessary for Van Dyke to carry out the agreement, to provide advertising assistance to Van Dyke, and to make available to Van Dyke education and sales training programs. *Id.*

13.     Van Dyke agreed to serve as an exclusive insurance agent for Farmers' insurance products.  Specifically, Van Dyke agreed to "sell insurance for [Farmers] . . . . All business acceptable to [Farmers] and written by the Agent will be placed with [Farmers]."  *Id.*, ¶ B.1.

14.     Van Dyke agreed not to solicit, accept or service the insurance business of Farmers' customers in Van Dyke's former district for a one-year period following termination:

> for a period of one year following [termination] the Agent will neither directly or indirectly solicit, accept, or service the insurance business of any policyholder of record in the agencies of this district as of the date of the [termination].

*Id.*, ¶ H. The Agent Appointment Agreement provided that Contract Value would be paid in six or twelve month intervals, absent embezzlement by Van Dyke. The payment schedule is designed to assure that former agents honor their obligation not to solicit Farmers' customers across the full one-year post-termination period or forfeit their Contract Value payments. *Id.*, ¶ G (Contract Value).

**B.    Farmers' Customer Information Is a Trade Secret**

15.    Farmers is a nationally recognized insurer and one of the largest property and casualty insurers in the United States. Farmers offers insurance policies, including automobile, homeowners, commercial and life insurance, to customers through a network of exclusive, independent contractor agents. Farmers' agents have access to Farmers' Agency Dashboard, which provides software tools that agents use to access customer information and operate their agencies. One of the tools is the Farmers' Electronic Customer Marketing System ("eCMS").

16.    The Farmers' customer information on the Agency Dashboard is a trade secret. Farmers' relationships with its customers and its customer information are its most valuable assets. A significant investment of time, labor, and capital have been spent in developing the proprietary database of trade secret pricing, expiration dates, and other customer information. Farmers' trade secret database contains information relating to customers' insurance needs, such as the types of insurance coverage, policy limits, claims history, the type of vehicles owned, the details of homes and other insured properties, eligibility for discounts, prospective pricing, policy expiration dates, cell phone numbers and e-mail addresses. Most all of the commercially-important information referenced above is not publicly available. There are no publicly-available lists of Farmers' policyholders. Farmers' confidential, detailed customer information is

5

available only to Farmers' insurance agents under restricted conditions and to a limited number of Farmers' employees.

17. Farmers derives substantial economic value from preserving its customer information, including their policy expirations, as a trade secret. A Farmers' business priority is securing the annual or semi-annual policy renewals from, along with any new policies needed by, its roster of current customers. A high retention rate is essential to Farmers' long-term financial health and growth. Farmers makes every effort to renew policies. A very high percentage of Farmers' policyholders consistently renew their Farmers' policies each term.

18. If Farmers' competitors had access to Farmers' trade secret customer information, they could more easily solicit Farmers' customers to change insurance providers. Competitors could generate insurance quotes without having made the investment of time, labor, and capital that Farmers made to compile and keep the customer information current. Competitors could use the pricing and other account information to under-bid Farmers for customer business.

19. Strong measures are taken to prevent and prohibit Farmers' trade secret customer information from being improperly accessed and misused by competitors or other third-parties. Farmers maintains its customer information on a password and user ID protected system. Farmers requires each employee or independent contractor agent who will access the data to agree to use Farmers' customer information only in the course of their employment or relationship with Farmers, and to promise not to divulge Farmers' customer information to third parties or to use it in any way detrimental to Farmers. Farmers also distributes company policies regarding access to and preservation of confidential customer information. Farmers maintains copies of those policies on the Agency Dashboard.

20.     At the termination of an agent's appointment with Farmers, the agent's user ID and password are deactivated.  The agent and its staff may no longer access eCMS (and the Agency Dashboard).

**C.      Van Dyke and Other Farmers' Agents Receive Training**

21.     Farmers provides training, education programs and materials to independent contractor Farmers' agents through the University of Farmers and local programs.  Van Dyke completed numerous educational and training programs offered by Farmers.  For example, Van Dyke participated in Farmers' Career Development System Training program which provided the necessary education and training to prepare to serve as a successful Farmers' agent.

**D.      Van Dyke and Other Agents Receive Financial Support**

22.     Independent contractor Farmers' agents receive financial support to help them develop and grow their businesses.  New agents may take out subsidized loans to help them meet their financial obligations.  Farmers may forgive these loans if the insurance agent meets target production numbers.

23.     Van Dyke took advantage of Farmers' subsidized loan program as an independent contractor Farmers' insurance agent.  To assist Van Dyke in developing his business as a full-time agent, Farmers agreed to pay, as a loan, certain amounts above his normal commission per month to ensure that he had a steady stream of income for a certain time period.  *See* Exhibit B.

**E.      Van Dyke and Other Agents Receive Marketing Support**

24.     Independent contractor Farmers' agents benefit from Farmers' very substantial investments in advertising and promoting the Farmers' brand (such as the current "We are Farmers" campaign) and marketing its customer and claims service, "HelpPoint," to consumers. Farmers spends millions of dollars annually on national advertising.

25.     The www.farmers.com website promotes the business of each independent contractor Farmers' agent.  Potential customers are able to find local agents by typing in their city or zip code.  Potential customers can also request a quote through the www.farmers.com website.  Requests for quotes are forwarded to local agents for follow up.

26.     Farmers provides independent contractor agents with tools to market to prospective and current Farmers' customers.  eCMS includes dozens of marketing campaigns from which insurance agents can select to promote their Farmers' business.  For example, agents can use eCMS to send targeted marketing materials to customers who have automobile insurance policies promoting Farmers' homeowners policies or life insurance policies.

27.     Van Dyke benefitted from Farmers' promotional activities and took advantage of a number of Farmers' marketing programs and campaigns.  For example, Van Dyke signed up for a program through eCMS in which Farmers sent targeted marketing materials on Van Dyke's behalf to potential new customers, former Farmers' customers, and existing Farmers' customers promoting Farmers' products.  A substantial portion of the costs of these marketing campaigns are paid for through the Farmers' Ad-Aid program.

**F.      Van Dyke Breaches His Duties, Misappropriates Farmers' Trade-Secret Customer Information and Solicits Farmers' Customers for Competitors**

28.     On May 20, 2015, Van Dyke submitted his resignation to Farmers effective August 22, 2015.  *See* Exhibit C.  On August 21, 2015, Farmers terminated Van Dyke's Appointment Agreement for willful misrepresentation, among other reasons, effective immediately.  *See* Exhibit D.  After ending his relationship with Farmers, Van Dyke became an agent for DVI Insurance Group, which represents insurers that compete against Farmers.

29.     While he was still under contract as an independent contractor Farmers' agent, Van Dyke surreptitiously represented Farmers' competitors and switched and diverted Farmers'

8

customers to those competitors, in violation of his contract and his fiduciary duties to Farmers. For example, on May 20, 2015, a Farmers' customer serviced by Van Dyke cancelled his Farmers' insurance policy. The customer informed Farmers that Van Dyke switched the customer's insurance to Hartford Insurance.

30.    Prior to terminating his relationship with Farmers, Van Dyke accessed eCMS to run reports for the Farmers' customers serviced by his agency. The reports included customers' names, addresses, the types of policies, and the renewal dates. These reports provide access to confidential, trade-secret customer information including customer names, addresses, phone numbers, policy expiration dates, types of insurance (home, auto, boat, etc.), the make, model and year of any automobiles, details about the home, and the current premium with Farmers. Through links on these reports, Van Dyke had access to claims history, social security numbers, other private customer information and prospective premium information. Van Dyke retained customer information after his Appointment Agreement terminated and, as described later, used this information to solicit Farmers' customers to switch their business to competing insurers.

31.    Following the termination of Van Dyke's Appointment Agreement, Farmers demanded that Van Dyke return all of Farmers' confidential trade-secret eCMS reports, lists, files and other proprietary information, pursuant to the terms of Van Dyke's agreement with Farmers. Van Dyke did not return all copies of those documents and information. On information and belief, Van Dyke has used those documents and information to solicit Farmers' customers for the benefit of DVI Insurance Group and the competing insurers that he represents.

32.    Farmers has complied with all of its contractual obligations.

9

**G.    Van Dyke Accesses Farmers' Computers Without Authorization to Obtain Trade Secret Customer Information and Alter Customer Passwords**

33.    After his termination, and while acting as an agent for DVI Insurance Group, Van Dyke improperly and without authorization accessed Farmers' website to obtain trade secret information about Farmers' customers.  Van Dyke misappropriated this information from Farmers' computer system and used it to solicit Farmers' customers to switch their policies to competing companies represented by DVI.

34.    Van Dyke repeatedly called the Farmers' 1-800 number and impersonated numerous Farmers' customers.  By using the confidential customer information that he had improperly retained, Van Dyke convinced the operators that he was a genuine Farmers' customer.  Having been deceived by Van Dyke's false pretenses, the operators provided Van Dyke with policyholder information and details about Farmers' customers.  Farmers has identified 259 such calls made to the 1-800 number from Van Dyke's old agency phone number.

35.    Van Dyke used the confidential information he improperly retained to access customers' accounts through www.farmers.com. Once logged in to customers' accounts, he reset customer passwords, and upon information and belief, obtained additional confidential information about these customers.

36.    Farmers' customers reported that Van Dyke was apparently misusing their confidential customer information and Farmers' computer system.  Customers advised that they received notices that their Farmers' account passwords had been changed, when they themselves took no such action.  Contemporaneously, Van Dyke called the customers and mentioned new information about their personal lives that he should not know.

37.    Van Dyke used his computer or computers to access an unknown number of records for customers on Farmers' protected computer system.

38.     Van Dyke had access to, and would have been able to download or print, confidential, trade secret information about Farmers' customers, including contact information, and information about their insurance needs, insured property, claims history, premiums and expirations.

39.     Van Dyke knew that he or persons acting on his behalf were acquiring Farmers' trade secrets through unlawful and improper means.  Van Dyke knew that Farmers owned the customer information on its website, such as expirations and prospective premiums, and this customer information was confidential and commercially valuable to Farmers.

**H.     Farmers Has Suffered and Will Continue to Suffer Irreparable Harm from Van Dyke's Unauthorized Access to Farmers' Customer Information**

40.     Farmers has suffered and will continue to suffer irreparable harm as a direct result of Van Dyke's misconduct.  Van Dyke's unauthorized use of Farmers' computer system and misuse of confidential customer information poses clear and present danger to Farmers' customer relationships, many of which were developed across many years and which Farmers reasonably expects would continue in the future.  Van Dyke's misconduct makes it more difficult for other Farmers' agents to maintain Farmers' relationships with its customers.  Each and every communication by Van Dyke to Farmers' policyholders threatens to upset Farmers' customer relationships, harm its goodwill and tarnish its reputation in ways that cannot be reversed or adequately remedied.

### COUNT I – MISAPPROPRIATION OF TRADE SECRETS
### (18 U.S.C.A. § 1832 et seq.)

41.     The allegations of Paragraphs 1 through 40 are incorporated herein by reference with the same force and effect as if set forth in full below.

11

42. The facts pleaded above constitute actual and threatened misappropriation of trade secrets by Van Dyke pursuant to the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C.A. § 1832 *et seq.*, in one or more of the following respects.

43. Farmers' trade secrets, including the contact and confidential financial and account information of Farmers' customers, are subject to reasonable efforts by Farmers to maintain their secrecy and/or confidentiality. Farmers' customer information is not generally known or available to the public.

44. Farmers' confidential customer information is considered a trade secret under the DTSA because Farmers derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

45. Van Dyke is misappropriating Farmers' trade secrets by failing to return the information to Farmers and using that information to wrongfully solicit Farmers' customers.

46. The economic value of the trade secrets is over $75,000.

47. Farmers faces an immediate threat of continuing irreparable harm, for which Farmers lacks an adequate remedy at law, from Van Dyke's ongoing misappropriation and misuse of Farmers' trade secret customer information.

48. Unless Van Dyke is preliminarily and permanently enjoined from the foregoing conduct, Farmers will be irreparably harmed by:

(a) Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Farmers and its customers;

(b)      Use of Farmers' trade secrets to solicit customers on behalf of competitors, and to disparage Farmers and Farmers' services in an attempt to convince Farmers' customers to transfer their business to competitors;

(c)      Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

(d)      Potential future economic loss, which is presently incalculable.

49.      Van Dyke's misconduct constitutes a willful and malicious misappropriation of Farmers' trade secrets.

50.      Farmers is entitled to preliminary injunctive relief, restitution, compensatory and exemplary damages, and reasonable attorneys' fees pursuant to 18 U.S.C.A. § 1832.

## COUNT II -- VIOLATIONS OF THE NEBRASKA TRADE SECRETS ACT
### (Neb. Rev. Stat. § 87-502 et seq.)

51.      Farmers repeats and realleges each and every allegation contained in paragraphs 1 through 40 hereof as if fully set forth herein.

52.      Farmers' prospective pricing, customer information and expirations are a compilation of actual customer information which is sufficiently secret to derive economic value for Farmers.  The detail contained in the customer information and expirations is not generally known to other persons who can obtain economic value from its disclosure or use, including Farmers' competitors.

53.      Extensive efforts have been taken to maintain the secrecy and confidentiality of Farmers' customer information and expirations both within Farmers' internal operations and in its business dealings, so that its competitors, including its former agents, cannot obtain economic value from the customer information and expirations disclosure and subsequent use.

54.    The value of the information to Farmers' competitors is substantial, as it consists of difficult to replicate information regarding Farmers' customers, including the dates for renewal of their policies, premium amounts, proposed premium for the next renewal, and other information about their vehicles and homes.

55.    Enormous amounts of money and effort have been expended over many years to develop and update the customer information and expirations contained in the Farmers' database, while at the same time keeping that information away from its competitors.

56.    The information contained in the customer information and expirations could not easily be acquired by Farmers' competitors without a substantial investment of time, resources and capital.

57.    At the time Van Dyke acquired and used Farmers' customer information and expirations, Van Dyke knew that the trade secret customer information had been acquired under circumstances giving rise to a duty to maintain the secrecy of the information and that the information could not be used to Farmers' detriment.

58.    Van Dyke disclosed and used Farmers' customer information and expirations for the purpose of competing with Farmers, without any consent by Farmers and in express violation of Van Dyke's duties to keep the customer and other information confidential.

59.    At the time of the disclosures or use, Van Dyke knew that the trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and prevent their use.

60.    Van Dyke knew that Farmers owned the customer information on eCMS, such as customer expirations and prospective premiums, and that this customer information was confidential and commercially valuable to Farmers.  When Van Dyke accessed Farmers' trade

14

secrets, Van Dyke knew that he had an absolute obligation and duty to maintain the secrecy of the information and to use that information solely for the purpose of selling Farmers' insurance products.

61.    Notwithstanding these duties, Van Dyke willfully and maliciously breached his duties and (1) misappropriated or improperly retained Farmers' trade secret customer information and expirations, (2) used the customer information and expirations to solicit or accept the business of Farmers' customers and (3) provided the customer information and expirations to other insurers and insurance agents for the purpose of competing against Farmers.

62.    Van Dyke's use of Farmers' customer information and expirations to compete against Farmers by soliciting or accepting the business of Farmers' customers and Van Dyke's disclosure of the customer information and expirations to Farmers' competitors for the same intent and purpose constitutes a misappropriation of trade secrets under the Nebraska Uniform Trade Secrets Act.

63.    As a direct result of Van Dyke's misappropriation, Farmers has suffered and will continue to suffer irreparable harm and damages, as further detailed in paragraph 48.

## COUNT III – BREACH OF CONTRACT

64.    Farmers repeats and realleges each and every allegation contained in paragraphs 1 through 40 hereof as if fully set forth herein.

65.    Van Dyke represented Farmers' competitors while he was under contract with Farmers.  Van Dyke switched existing Farmers' customers to competitors and diverted potential new business to competitors rather than placing the business with Farmers.

66.    After termination of his agreement, Van Dyke retained Farmers' confidential customer information that he was required to return to Farmers under the terms of the Appointment Agreement.

67.    Van Dyke used Farmers' confidential customer information to unfairly compete against Farmers.

68.    Van Dyke breached the Appointment Agreement by using Farmers' confidential customer information and expirations to Farmers' detriment.

69.    Farmers performed all of its obligations under the Appointment Agreement.

70.    As a result of Van Dyke's breaches of the Appointment Agreement, Farmers has suffered losses and damages. The exact measure of damages caused by Van Dyke's breaches cannot be readily calculated, as damage to customer relationships has many long-term, adverse impacts. Farmers has been injured at least in the amount of the lost profits on the Farmers' policies that have been cancelled or have not renewed and switched to other insurance companies with Van Dyke as broker or agent.

## COUNT IV – BREACH OF FIDUCIARY DUTY

71.    Farmers repeats and realleges each and every allegation contained in paragraphs 1 through 40 hereof as if fully set forth herein.

72.    During the period that the Appointment Agreement was in effect, Van Dyke owed Farmers fiduciary duties, including the duty of loyalty, fidelity, candor, care, rectitude and good faith.

73.    Van Dyke breached those duties by retaining Farmers' confidential customer information after his termination, using that information to solicit Farmers' policyholders to cancel or not renew their Farmers' insurance policies, and placing the wrongfully-solicited insurance business with competitors of Farmers. Van Dyke used Farmers' confidential policyholder information to Farmers' detriment and for his own benefit and to the benefit of Farmers' competitors.

74.    As a result of his breaches of fiduciary duties, Van Dyke has unjustly received

16

and retained compensation paid to him by Farmers and caused Farmers to suffer damages including, but not limited to, the loss of business and monies.  Van Dyke also received commissions from other insurance companies for the business Van Dyke moved and diverted from Farmers to those other companies.

75.    The foregoing breaches of fiduciary duties were willful and malicious, and warrant the imposition of punitive or exemplary damages against Van Dyke.

### COUNT V – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY

76.    Farmers repeats and realleges each and every allegation contained in paragraphs 1 through 40 hereof as if fully set forth herein.

77.    At all times relevant hereto, Farmers had a reasonable expectancy of continuing its business relationships with its policyholders.

78.    At all times relevant hereto, Van Dyke was fully aware of Farmers' business relationships and Farmers' reasonable expectancy to continue its business relationships with these policyholders.

79.    Notwithstanding Van Dyke's awareness of these reasonable business relationships and business expectations, Van Dyke, without lawful purpose and through unfair means, intentionally and maliciously interfered with these reasonable expectancies and caused Farmers' policyholders to end their business relationships with Farmers and to switch their insurance business to Farmers' competitors.

80.    As a direct and proximate result of these tortious and unlawful acts, Farmers has sustained substantial damages.

81.    The foregoing unlawful actions of Van Dyke were willful and malicious and warrant the imposition of punitive or exemplary damages.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Farmers hereby demands a trial by jury on all issues so triable.

## REQUEST FOR PLACE OF TRIAL

Pursuant to Nebraska Civil Rule 40.1(b), Farmers requests the jury trial to take place in Omaha, Nebraska.

## CONCLUSION

WHEREFORE, Farmers requests that this Court enter judgment in their favor and against Van Dyke as follows:

(A)   Enjoining and restraining Van Dyke by ordering that he:

   (i)   return to Farmers all manuals, lists and records of any kind (including information pertaining to policyholders and expirations);

   (ii)   turn over his computers to Farmers for forensic examination to determine the full extent of Van Dyke's retention and use of Farmers' customer information and to delete any Farmers' information;

   (iii)   refrain from any further use of Farmers' confidential, proprietary, and trade secret information;

   (iv)   refrain from any further violations of the Agent Appointment Agreement;

   (v)   refrain from competing unfairly with Farmers;

(B)   Awarding Farmers all available compensatory damages and other monetary relief, including ordering Van Dyke to forfeit Contract Value payments.

(C)   Ordering Van Dyke to disgorge all monies he gained as a result of his misconduct.

(D)   Awarding Farmers all available exemplary, double or treble damages as provided by statute.

(E)   Awarding Farmers punitive damages in an amount sufficient to punish Van Dyke for his intentional violation of Farmers' rights and to deter him from further violation of Farmers' rights.

(F)    Awarding Farmers costs and disbursements of this action.

(G)    Awarding Farmers attorney's fees.

(H)    Granting Farmers such other relief as the Court deems just.

DATED this 19th day of July, 2017.

FARMERS INSURANCE EXCHANGE,
TRUCK INSURANCE EXCHANGE, FIRE
INSURANCE EXCHANGE, MID-
CENTURY INSURANCE COMPANY, AND
FARMERS NEW WORLD LIFE
INSURANCE COMPANY, Plaintiffs


By:    */s/ John P. Passarelli*
        John P. Passarelli #16018
        Maggie L. Ebert #24394
        KUTAK ROCK LLP
        The Omaha Building
        1650 Farnam Street
        Omaha, NE  68102-2186
        (402) 346-6000
        john.passarelli@kutakrock.com
        maggie.ebert@kutakrock.com

        Randall A. Hack (*Pro Hac Vice* to be filed)
        Brian I. Hays (*Pro Hac Vice* to be filed)
        LOCKE LORD LLP
        111 South Wacker Drive
        Chicago, IL  60606
        (312) 443-0676
        rhack@lockelord.com
        bhays@lockelord.com

19